The final case on calendar for argument is National Coalition for Men v. Selective Service System. Good morning, Your Honors, and may it please the Court. Good morning. I'd like to reserve three minutes for rebuttal, please. All right. Watch your time. The male-only registration requirement does not serve an important interest, and instead, as Justice Thurgood Marshall stated in his dissent in Rosker, it is one of the most potent remaining expressions of the ancient canards about proper roles of women. As you know, federal judges must take an oath of allegiance to the Constitution before they assume office, and it is this Court's duty to uphold the Constitution. And this duty outweighs Congressional inaction and the Supreme Court's decision to deny Plaintiff's writ in 2021. So, Counsel, you're saying we should reverse the Supreme Court? Well, there are a series of cases where you can decide to reverse and remand this case. Reed, Goldfarb, Frontera, Weissenberg, all of these cases find that there was very much discrimination written into the law on the basis of sex with no legitimate government interest. And so, based upon those cases and including some of the holdings in the majority in Rosker, I believe you could find in favor of Plaintiffs. The Supreme Court does not look kindly on us disregarding their precedent and has told us that we are better served to leave it to them to decide when their precedent should be changed. What's your response to that? Understood, Your Honor. The Ninth Circuit decision in Kivett on October 2nd, 2025, disregarded the Supreme Court's directive specifically to the Ninth Circuit, where the Supreme Court said that this court should use a nuanced comparative analysis based on the standard from the Barnett-Bate case. But when the Ninth Circuit looked at Kivett again, they decided not to do that, and they affirmed their own decision. We don't have a decision in this arena that we could affirm, do we? I'm not sure I understand. We don't have a decision on this issue, selective service system. Do we have a decision from the Ninth Circuit that is contrary to the Supreme Court decision in Rosker? I'm sorry, I don't know what you're asking. Your argument was that in a different case, the Ninth Circuit was directed by the Supreme Court to apply its own ruling. I'm asking you, for this issue that's before us today, the selective service system, is there a Ninth Circuit case that you can refer us to that we could adhere to that is inconsistent with Rosker? I can refer you to Reed, Frontiera, Gall, Barnett. But we've got Rosker. Right. Do you concede that Rosker upheld the same law that you're challenging here? It did. Has there been any intervening challenge or any change that Congress has enacted, that Congress has enacted, not some senators have talked about, but that Congress has enacted, that has changed that law that would restart our, renew our ability to review some different enactment by Congress? No, Your Honor. But the duty that you have to uphold the Constitution, it's been 44 years since the Rosker court was decided. Article 3 says there's one Supreme Court, and we're not it. And that's in the Constitution, too. So we're trying to figure out in terms of, again, as Judge Rawlinson has said, we owe a duty of vertical stare decisis here. On the point that nothing has changed in the law, I think your point is that the facts have changed. And even some executive branch policies have changed. Does it matter that, as I understand it, have the combat restrictions ever been codified? The Department of Justice lifted combat restrictions in 2013, and then President Obama in 2016 opened all roles to women. Okay. So I guess I understood that at some point in time, though not necessarily with the enactment at issue in Rosker, that both the Navy and Air Force, I think Rosker said this, referred to the fact that both the Navy and the Air Force were subject to statutory combat restrictions, but those were repealed. So that has left it a matter for the executive. But that's not part of your argument. Your view is this is a challenge to the same law, the identical law that the Supreme Court upheld, on grounds that might have changed factually but haven't changed legally with respect to the acts of Congress? Yes. The majority in Rosker said we firmly keep in mind that women are banned from combat when they made their decision. And now plaintiffs simply ask this panel to consider a different question. In light of the fact that the Department of Defense lifted the ban on women, and in fact women now serve in every capacity, in every branch, from the battlefields to airships, to airplanes, I'm sorry. But couldn't the – again, I guess I'm trying to focus on the difference between acts of Congress and acts of the executive. I think it's hard to tell in Rosker to what extent the combat restriction that's doing the work there, if that's the sole reason that they're arresting their equal protection holding or their due process holding, is the statutes that pertain to the Navy and the Air Force or the executive branch policies that pertain to the Army and Marine Corps. But it sounds like you're focused on just the executive action. Isn't the problem there is that the – if those can change, right? The executive can arguably change those policies. And so it's kind of a moving target. Every time the executive – the executive could change it, but the executive could change it back, and we'd be right back to the exact situation of Rosker if there was a combat ban. Right. Your Honor, Congress authorized a 2020 – a study that was released in 2020, and that was the basis for the Supreme Court to deny plaintiffs' writ in 2021. How do we know that? How do you know what? That that was the basis for the Supreme Court to deny the writ. Justice Sotomayor said that Congress is deciding the issue. Justice Sotomayor, Justice Breyer, Justice Kavanaugh, that's three. Need a little more than that to be the court, though. I mean, I guess the problem is that I think part of your case determines on us relying on assuming that Congress did something that Congress didn't, that some senators did, and also assuming that the court said something that the court didn't, that some justices did. Don't we have to kind of stick to what Congress actually as a body does and what the court as a body does? Well, Your Honor, I think that plaintiffs in this case are asking a different question. In light of the fact that Rosker was 44 years ago and that women now serve in every capacity in the military in all the branches, does the prohibition of women registering for the draft discriminate on the basis of sex? And it clearly does. I mean, it can't turn on the age. I think we've recently applied some cases that are more than 200 years old in some cases. So it turns on the facts. But I guess my question there is that the Supreme Court, hasn't the Supreme Court baked in for itself a change in the facts in Casey and other cases? That's a reason for the Supreme Court to overrule its cases. That's what they said in Casey. It's what they've cited to subsequently. Have they ever said that's a reason for us to overrule their cases? No, Your Honor. I think that's our problem. Could I ask you to say a bit about standing? So you have, starting with the individual named plaintiffs, what is the injury from which the named plaintiffs are suffering? Well, Your Honor, all of the plaintiffs in this matter have registered for the draft. They've complied with the law. But there's an ongoing obligation. Every time they move, they must, they have an affirmative duty under the law to keep the federal government informed of where they live and where they can be reached if the president ever calls them up for the draft. And so that is a definite and concrete injury. It's been decided already by this circuit. Do they plan to move before they turn 26? Well, it's such a mobile society that almost all of the plaintiffs live in Los Angeles and are very young. I would probably bet that they will move because it's too expensive to live here. Maybe you'll win the bet, maybe you won't. But the complaint doesn't allege anything about any intention to move. I'm sorry to interrupt you, Your Honor. If we're going to say that the Ninth Circuit has to uphold itself and Supreme Court precedent, then the precedent is very clear that an injury that is based on a statute that discriminates on the basis of sex, which creates an affirmative obligation on one's sex, that injury is definite and concrete. And this court, in the first iteration of this case with my plaintiff, National Coalition for Men, they determined that those plaintiffs did have standing. And that fact was left out in defendants' brief. If they didn't register, for example, what would be the consequences then? Well, the consequences are so steep. If a young man doesn't register, $250,000 fine. If it's found that somebody like his parents aided and abetted him in not registering, they can be fined. Jail, you can be denied federal benefits for life if you don't correct it by the time you're 26 and you try to get clearance or a job in some state courts as well. The injury could be permanent. We do have cases that suggest that you don't have to comply. You can still challenge a law that you think is unconstitutional that you've complied with to avoid those consequences. Do you think you've adequately pled the consequences that would have faced them had they not complied? Plaintiffs in this action, aside from National Coalition for Men, they can get called up to the draft any time, and their consequences could be death, loss of a limb. But how is that? I mean, they've already registered. So if that's the injury, you're not seeking to deregister them, are you? No, Your Honor. So I don't doubt that that's an injury. And if you had plaintiffs who were 16 or 17 and said, you know, I want an injunction so I don't have to register, that would be different. But you have people who have already registered. They can't be deregistered. So to the extent there's an injury, it seems like it's not redressable.  Well, the Natural Resources Defense Council versus United States EPA held that when a challenged government action imposes an affirmative duty on the plaintiff, that obligation alone may constitute a sufficient injury for Article III standing. When it imposes a duty, here the duty was imposed and has been discharged. There's an ongoing duty for them to keep the government up to date on where they live. Right, but that only affects them if they move. And I grant that it would have been easy to write a complaint that alleged some concrete intention to move. But what Lujan says is just sort of speculation about maybe someday I might do something is not enough. And you haven't alleged anything about anything concrete that would subject them to the registration updating requirement. Well, the Ninth Circuit in the first iteration of this case already established that they had standing. So did the Fifth Circuit. So did the Texas Southern District Court. And just so I'm clear, the first iteration of this case, which from the circuit, I just want to be clear, which? So it was National Coalition for Men versus Selective Service, the case where Justice Sotomayor declined the writ. No, it was filed in 2013. And our decision is what year was that? Oh, my gosh. That would be the one thing that I don't have in my notebook. Was that a published opinion that ruled on standing? No, Your Honor. OK, so OK. And what about the. Well, go ahead. Did you want to reserve some time? I'll reserve the rest of my council. Good morning, Your Honors. And may it please the court. Sean Janda for the federal government. In Rosker against Goldberg, the Supreme Court held that the Military Selective Service Act does not violate the equal protection principles that are incorporated into the Fifth Amendment's due process clause. Plaintiffs now raise the exact claim rejected by the Supreme Court in Rosker, and they contend that this court may disregard Rosker's holding because intervening factual developments have assertedly eroded its reasoning. But this court's precedents make clear that this court does not engage in that sort of anticipatory overruling of Supreme Court holdings, even when there are assertedly relevant factual developments that have, again, assertedly eroded the reasoning of the holdings. Do you agree that Rosker turned entirely on the combat restrictions? No. That was their sole reason? I don't think so, Your Honor. OK. There's certainly a lengthy discussion of the combat restrictions in Rosker. Rosker also says a fair amount about, again, the deference accorded to Congress in this military context. Rosker explains that Congress engaged at some length with the question of whether to extend the registration requirement to women and didn't kind of reflexively or unthinkingly exclude women based on stereotypes or other impermissible reasons. And I don't know how all of those different considerations played into the ultimate holding in Rosker. But the key point is just that sort of figuring out what weight to give to those different considerations and what weight to give to any changed factual circumstances is a task for the Supreme Court, not a task for this court. Why wouldn't the changed legal circumstances, as I understand, during Rosker, at least some of the services had statutory combat restrictions that were repealed. So at the time, the Supreme Court was viewing the legal as opposed to the factual landscape and assessing what the state of the law was in understanding the government's and Congress's interests in enacting this on a facial challenge. Why wouldn't kind of pulling a couple of those pieces of the puzzle out in terms of Congress then stepping back from combat restrictions while still maintaining the selective service law? Why wouldn't that change the calculus as a legal matter? I mean, I don't think this court has drawn that sort of distinction between factual and legal developments in terms of the continued vitality of Supreme Court precedents. We cite Nguyen against Wengler in our brief, which makes the point that this court doesn't engage in a statutory overruling of Supreme Court precedent. And the claim there was actually that the enactment of AEDPA had changed previous Supreme Court or had eroded previous Supreme Court precedents about habeas review of certain claims. And so this court there, just as in circumstances where there are sort of factual developments, said, again, that how much sort of the legal context was relevant to the Supreme Court's decision is a question for the Supreme Court to figure out. Would it have mattered that if the law, the enactment – I don't want this to seem too formalistic, but this is a facial challenge and this is a challenge to something Congress did. Would it matter if the original provision did contain a combat ban and then that was repealed? In other words, the enactment – when Congress acted, it acted against a backdrop within the same law of this goes with this and now we've taken this away. Why wouldn't that make the law different as opposed to AEDPA or some subsequent enactment? They just changed the law that's under review. I mean, I think really courts focused on the particular provisions of the issue. And so if there is a provision that extends registration, there is a provision that extends registration burdens to men but not to women, and that's exactly what was upheld in Rosker. And whatever sort of legal changes Congress has made since then, whether they're in the same statute, whether they're in other statutes, I think, again, it just is not relevant to the question whether Rosker's holding sort of continues to bind this court on the exact question that was addressed by the Supreme Court in Rosker, which is whether these specific provisions of the Military Selective Service Act are unconstitutional. Well, I wonder because I get that the 14th Amendment doctrine has stayed roughly the same, but Rosker's has this kind of much more legal process than textualist opinion. And so it spends a lot of time talking about legislative history, Congress motives, things that we may not necessarily would look at or the Supreme Court would not necessarily look at now. And so if we were just looking at the text and the law, Law A is materially different than Law B because Law A was enacted with a combat restriction and Law B was enacted without, and Law B no longer has a combat restriction. I just, why wouldn't that make a difference? I mean, I think, again, the Supreme Court has just said over and over again, this Court has said over and over again that when you have really this sort of directly on point holding, that continues to bind the lower courts. And I think any other standard, I mean, really would be unworkable in our system of vertical stare decisis. The world is changing every day. Laws are changing every day. And when the Supreme Court has, I mean, really directly addressed the question, this isn't a thing where we're having to infer something from the Supreme Court or sort of draw reasoning from a Supreme Court case and apply it to a different context. This is the exact question addressed by Rosker. Until the Supreme Court revisits its own precedent, this Court just remains bound. And that's, again, the panel of this Court said that in this exact context three months ago in Villain, a panel of the Fifth Circuit obviously said that five years ago against sort of the same factual backdrop and legal backdrop. And I think this Court to just follow the lead of the previous Ninth Circuit panel, the lead of the Fifth Circuit and the Supreme Court's lead in upholding the Constitution out of the restrictions if it reaches the merits of the case. But before that, there's also sort of a standing issue, which we've raised in our brief, which I'm also happy to address with the Court. Why doesn't the coalition have associational standing? So I think to have associational standing, the coalition would need to identify a member with individual standing. Do they need to identify a – they don't need to identify a particular named member. They just need to show that they have at least one, right? I think they have to identify a specific member. I mean, I don't know if they have to sort of pick the name of the person. Maybe they could do it pseudonymously or something like that. But they do have to identify a particular member. I mean, that's like Summers against Earth Island. They can't sort of say we have a bunch of members, and presumably some of them are going to move, and so some of them have standing. I think they need to identify the particular individual member who they think gives rise to standing. So they do allege – this is paragraph 26 of the complaint – some of NCFM's members are males 18 through 26. So they presumably already registered. But then it says, or who will be 18 to 26 at some time relative to this lawsuit. So if they've got members who are not yet 18 and thus not yet subject to the requirement, those people – I mean, if they had named such a person, would you concede that that would be a person facing some impending injury that could be redressed? Yeah, if they had named a 17-year-old who said I'm going to have to register when I turn 18 and that will be an injury, I think they would have standing to seek relief, at least on behalf of that member. And then, again, they may also be able to say that the individuals they've already identified in this lawsuit do in fact plan to move at some point in the imminent future. So there may be sort of curable problems with the standing theory, but I think the fundamental problem is just that the complaint doesn't do any work to identify any specific individuals or members of NCFM who have standing in their own right. And so you think that the statement that some of the members will be 18 to 26 because it doesn't – because it's insufficiently specific as to which member, is that the problem with that? Yeah, I think that they would need to show sort of a particular member in that respect, and a member who, again, they – not only is it a member of the organization, but who they are able to litigate on behalf of, whose claim they can bring, which I think would raise – without them doing that work, would raise a host of thorny questions about their ability to assert. And so if they added a sentence, you know, one of our members who we prefer not to identify by name just turned 17, like, is that enough then? That may well be enough. I mean, again, if they can identify a particular person, I think there would be the obligation at that point, probably for them to ensure that whoever that person is understands that they are – that the coalition is attempting to assert that person's claim in court, and that that person might be bound if the coalition loses. And so there might be some requirements that go along with trying to assert that person's claim. But again, if they have a member who's 17, and that member would like them to litigate that member's claim, that member might well have standing, and they could establish associational stance on that basis. If you – I mean, what was – I don't recall whether – off the top of my head whether leave to amend was sought. I mean, would it be appropriate to allow leave to amend? I mean, if – because as you say, I mean, these do seem like potentially fixable problems in the complaint. Yeah, I don't think it matters that much because if this court thinks that there's no standing on the current record, it would, I assume, direct the court – the district court to dismiss without prejudice, and they could bring a new complaint. But leave to amend was sought. I mean, obviously it would be futile on the grounds that the district court decided the case. I'm sorry.  But, Mr. Jand, I didn't take you to be making a redressability argument in the briefs. Why – explain why leveling the playing field in the way the plaintiffs would ask. Either way wouldn't be – wouldn't redress the harm that they're feeling. So I think that requires sort of identifying the particular harm. And we don't disagree that if they had someone who was going to have to register in the future, that the court could level down and redress that imminent injury. But for people who have already registered, that's a past injury. And so I don't know how prospective relief, you know, leveling the playing field for other people going forward, could redress the past harm that the individual plaintiffs have suffered through having registered previously. And I think they try and get out of this in the reply brief by saying that there's some ongoing injury by virtue of having registered. But I just don't think that's how courts think about injury. I mean, there was a discrete past event where they were required to register. We haven't disputed that that constituted a past injury. So how do you read their complaint? Is it a request to – without getting into which side is better characterized as leveling up or leveling down, is it a request to include women in the selective service system or a request to exclude men? So I'm not entirely sure. Yeah, that's why I was asking. I'm looking at the prayer and I'm not – Yeah, I mean, so they say they want an injunction that prohibits the government, quote, from pursuing its policy to require male citizens to register with the selective service, which I assume would be a sort of injunction that would make it so that no one has to register. They also say they want an injunction requiring the government to end discrimination on the basis of sex in its military draft registration system. That, I assume, could result in everyone having to register or no one having to register. I don't know if they want the district court to decide which of those two outcomes would be proper or if they think the district court should leave it to the government to decide. Well, I mean, I guess it might matter for addressability because if what they're looking for is what the second clause of that first prayer contains, wouldn't that then redress? I mean, it's unclear exactly how and when the Supreme Court has recognized this injury, but whatever stigmatic harm there is for them to be subject to these requirements and women not to be subject to these requirements. Yeah, I don't think so. I mean, in that they were subject to the requirement at some point in the past when women were not subject to the requirement, and so I'm not sure how sort of, again, leveling the playing field for people who will be subject to the requirement in the future does anything to address whatever harm stems from the unequal treatment that they've identified in the past. And the cases that they cite in the reply brief about this point all involve kind of ongoing injuries, so the provision of Social Security benefits, which happen every month, or the government contracts, which are given out regularly over time. Why isn't it enough? I mean, there are very few laws in the federal code that are so prescriptive, a sound constitutional basis that kind of compel the conduct of our citizens throughout this period in their lives, and so why isn't it enough given that we're in a mobile society, people move around and stuff, that at least gets over the low bar for standing that we can infer from this that these plaintiffs are just like most plaintiffs in the U.S., particularly young men and mobile moving likely to potentially trigger some of these regulations. Yeah, I mean, I think the fundamental issue is just that it's their burden to allege the facts from which you could plausibly infer standing, and there's just nothing addressed in their complaint to the possibility that any of them is likely to move, and not just likely to move before they turn 26, but likely to move at some point in the imminent future. And so I'm not saying they can't allege that or they wouldn't have been able to allege that, but I think without those allegations, there's just not the basis that they need for standing. Counsel, do you challenge organizational standing? So I want to be sort of careful about this. There's sort of their theory of associational standing that they, because they have members who have standing, can represent those members. We think that fails because it's derivative of the member standing, which fails. In the reply brief, I think for the first time in this entire litigation, they cite Havens Realty and say, well, also we have organizational standing. That, I mean, number one, I think the court can just say that theory of standing was forfeited. If you look at the complaint, if you look at the briefing in district court, that's nowhere raised as a separate theory of standing. And then on the Havens Realty point, I know this. We've already discussed that recently. We have. So I am aware of this court's considering en banc the continued vitality of those sorts of theories of standing. I think in this case, what you can say is that there's certainly nothing in the record that explains how the organization has been injured by the Selective Service Act and in what ways it's sort of resources or otherwise suffered an injury. So I think for purposes of this case, the court need not resolve whether that could be a viable theory of standing. Again, some other case with different allegations. All right. Thank you. Thank you. For two of the plaintiffs, one lives at home with his mom right now. He's a very young man. And one is away at law school. So they certainly are going to move. But that's not in the complaint. Correct. We could amend the complaint to add those facts. And that's only two that I know. The equal protection is a long-held principle that all people similarly situated should be treated alike. And this case here is about an archaic law that perpetuates these stereotypes, you know, that women can't serve in the military, which they clearly can, and that men can't stay at home and tend to families or keep the home front going. And these are stereotypes that we can't allow to continue. At first glance, the exclusion of women in service seems like a protective measure, but it is a gilded house upon which the military selective service acts rest as a cage. The law is based upon these incorrect assumptions about men and women and their antiquated perceptions of their roles in society. This court in Horizon Air Industries versus National Mediation Board ignored Supreme Court precedent and refused to apply the National Labor Board versus Giselle 1969 case that set forth the parameters of the union election under the National Labor Boards Relations Act. And, again, plaintiffs are not really asking you to overlook rock skirt. We're asking a different question. In light of the fact that women are not banned from combat, does the MSSA discriminate on the basis of sex? And it does. And in light of the comments from the majority, not even the dissent from the majority, that they relied solely, it's said, we relied heavily on the fact that women were banned. And if you look at all the long line of cases that I've already cited to read Frontiero Goldberg in context with what I just discussed, you're not overturning. You're simply asking a different question and coming to the correct conclusion to stop this unlawful discrimination on the basis of sex. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. All rise.
judges: RAWLINSON, MILLER, JOHNSTONE